## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERESA ANNE SCOTT,** | : | **CIVIL ACTION NO. 1:02-CV-1586** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **PAMELA WELLINGTON LACKEY** | : | |
| **and EVAN LESLIE ADAMS and** | : | |
| **JANICE MOLINA and DOES 1-50,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court is a motion, filed by defendant Evan Leslie Adams ("Adams"), to dismiss the claims of plaintiff Teresa Anne Scott ("Scott") for defamation, false-light, and conspiracy. For the reasons that follow, the motion will be granted in part and denied in part.

## I.    Statement of Facts[1]

Evan Adams is both a Canadian medical doctor and an actor. (Doc. 160 ¶ 3). In the latter capacity, he enjoys a loyal following on the internet, and has apparently endorsed and participated in discussions on at least two internet sites dedicated to the promotion of his acting career. (Doc. 160 ¶ 3). One of the discussions was moderated by defendant Pamela Wellington Lackey ("Lackey"), a

---

[1] In accordance with the standard of review for a motion to dismiss for lack of personal jurisdiction, the court will present the facts as alleged in plaintiff's complaint except where controverted by an opposing affidavit. See infra Part II. The statements contained herein reflect neither the findings of the trier of fact nor the opinion of the court as to reasonableness of the parties' allegations.

painter and art teacher residing within the Middle District of Pennsylvania.  She

purportedly acted as an authorized representative, agent, and employee of Adams.[2]

(Doc. 160 ¶ 4).

Scott is a resident of Maryland, and has been a member of various internet

communities and discussion groups related to the acting career of Adams and his

contemporaries since at least 1999.  (Doc. 160 ¶¶ 1, 7, 15).  According to Scott, Adams

sent defamatory e-mails and letters to Lackey and directed her to share these

communications with various individuals and moderators of internet discussion

groups.[3]  These communications allegedly contained false statements that

"destroyed" her reputation "not only on the internet, but also in her home

community and presumably, all over the world."  (Doc. 160 ¶ 99).  Scott also asserts

that her business opportunities in the field of freelance writing have suffered due to

defendants' defamatory statements.  (Doc. 160 ¶ 97).

Prior to commencing the instant action, Scott filed a defamation action

against defendants in the United States District Court for the District of Maryland

on February 22, 2002.  (See Doc. 38).  On March 27, 2002, the Maryland court d

---

[2] Although Adams denies that Lackey acted as his agent, there are affidavits and correspondence of record upon which a reasonable jury could find to the contrary.  (Compare Doc. 179, Att. 2 with Docs. 20, 24; Doc. 217, Att. 1-3, 5).

[3] Scott has filed with the court numerous documents representing communications among Lackey, Scott, and others, and messages posted on public internet discussion boards.  (See Doc. 44, Exs. 1-43).  In these documents, defendants allegedly:  (1) accuse Scott of sending sexually obscene email messages to Adams and other celebrities, (2) characterize Scott's behavior toward Adams and his contemporaries as harassment or "stalking," and (3) claim that Scott is mentally unstable and dangerous.  (See Doc. 44, Exs. 1-43).

dismissed the action for want of jurisdiction, finding that defendants did not aim their tortious conduct at Maryland residents or seek to harm Scott's reputation in Maryland. (See Doc. 38; Doc. 217, Att. 4). After her attempt to transfer the Maryland action to this court proved unsuccessful, Scott filed the original complaint in the instant action on September 9, 2002. (Doc. 1). An amended complaint was filed in July 2003 (Doc. 44), and a second amended complaint was filed in August 2004 (Doc. 160). Adams did not respond to these complaints, and in September 2004 the court entered default judgment against him. (Doc. 163). In May 2005, judgment was set aside when the court determined that Adams had not been properly served. Scott was granted leave to effect service upon Adams and, following service, Adams filed the instant motion to dismiss. (See Docs. 200, 209). The instant motion argues that the court lacks personal jurisdiction over Adams.

## II.   **Standard of Review**

Motions to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), like those for failure to state a claim under Rule 12(b)(6), require the court to accept as true the allegations of the pleadings and all reasonable inferences therefrom. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 368 (3d Cir. 2002). However, unlike Rule 12(b)(6), Rule 12(b)(2) does not limit the scope of the court's review to the face of the pleadings. See id.; Cateret Sav. Bank, F.A. v. Shushan, 954 F.2d 141, 142 & n.1 (3d Cir. 1992). Consideration of affidavits submitted by the parties is appropriate and, indeed, required. Id.

Although the non-moving party bears the ultimate burden of proving

personal jurisdiction by a preponderance of the evidence, that party need not

make such a showing at the preliminary stages of litigation.  Id.  Rather, the party

must merely allege sufficient facts to establish a prima facie case of jurisdiction

over the person.  Pinker, 292 F.3d at 368.  Only if these allegations are contradicted

by an opposing affidavit must the non-moving party present similar evidence in

support of its position.[4]  Cateret Sav. Bank, 954 F.2d at 142 & n.1.  Once it does, the

court is bound to accept the non-moving party's representations and defer final

determination as to the merits of the allegations until trial.  Id. (stating that the

"plaintiff need only plead [a] prima facie case to survive the initial [Rule 12(b)(2)]

motion, but must eventually establish jurisdiction by a preponderance of the

---

[4] Some cases suggest that, to overcome a jurisdictional challenge under
Federal Rule of Civil Procedure 12(b)(2), the non-moving party may not rely on the
pleadings alone but must produce affidavits or other evidence in support of its
position.  See, e.g., Rodi v. S. New Eng. Sch. of Law, 255 F. Supp. 2d 346, 348 (D.N.J.
2003).  However, this misstates the non-moving party's burden.  If the moving party
fails to submit evidence contravening the allegations of the complaint, the court is
bound to accept those allegations regardless of whether the non-moving party
presents evidence in support of them.  See Cateret Sav. Bank, 954 F.2d at 142 n.1
(stating that the "plaintiff need only plead [a] prima facie case to survive the initial
[Rule 12(b)(2)] motion, but must eventually establish jurisdiction by a
preponderance of the evidence") (citing Marine Midland Bank v. Miller, 664 F.2d
899, 904 (2d Cir. 1981)); see also Behagen v. Amateur Basketball Ass'n, 744 F.2d 731,
733 (10th Cir. 1984) ("The allegations in the complaint must be taken as true to the
extent they are uncontroverted by the defendant's affidavits."), cited with approval
in Cataret Sav. Bank, 954 F.2d at 142 n.1.  In other words, although the burden of
persuasion always lies with the non-moving party, the burden of production rests
initially with the party moving for dismissal under Rule 12(b)(2).

evidence") (citing <u>Behagen v. Amateur Basketball Ass'n</u>, 744 F.2d 731, 733 (10th

Cir. 1984)).

**III.**   **Discussion**

Under Federal Rule of Civil Procedure 4(k)(1)(A), district courts may exercise

personal jurisdiction over any party "who could be subjected to the jurisdiction of

a court of . . . the state in which the district court is located."  FED. R. CIV. P.

4(k)(1)(A).  Pennsylvania law provides that "the jurisdiction of the tribunals of this

Commonwealth shall extend to all persons . . . to the fullest extent allowed under

the Constitution of the United States."  42 PA. CONS. STAT. § 5322(a)-(b).  Courts

have consistently interpreted this provision as making jurisdiction under

Pennsylvania law coextensive with jurisdiction under the 14th Amendment.

<u>Santana Prods., Inc. v. Bobrick Washroom Equip.</u>, 14 F. Supp. 2d 710, 713 (M.D. Pa.

1998); <u>Kubik v. Letteri</u>, 614 A.2d 1110, 1113-14 (Pa. 1992).  Thus, the dispositive issue

is whether Pennsylvania courts could constitutionally exercise jurisdiction over

the party.

Proceeding then to the constitutional inquiry, the court's decision is guided

by the familiar "minimum contacts" test enunciated in <u>International Shoe Co. v.

Washington</u>, 326 U.S. 310 (1945), and refined by its prodigious progeny.  <u>See, e.g.</u>,

<u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 474 (1985); <u>World-Wide Volkswagen

Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).  Under this standard, the exercise of

personal jurisdiction is permissible if the defendant "purposefully established

'minimum contacts' in the forum State," and the assertion of jurisdiction comports

with "traditional conception[s] of fair play and substantial justice."  Burger King,

471 U.S. at 464, 474 (quoting Int'l Shoe, 326 U.S. at 316, 320).

The minimum contacts analysis focuses on whether the defendant has, by

some act related to the plaintiff's current cause of action,[5] "purposefully avail[ed]

itself of the privilege of conducting activities within the forum State, thus invoking

the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253

(1958), quoted in Burger King, 471 U.S. at 475.  As the Supreme Court has stated:

> This "purposeful availment" requirement ensures that a defendant
> will not be haled into a jurisdiction solely as a result of "random,"
> "fortuitous," or "attenuated" contacts, or of the "unilateral activity of
> another party or a third person."  Jurisdiction is proper, however,
> where the contacts proximately result from actions by the defendant
> *himself* that create a "substantial connection" with the forum State.

Burger King, 471 U.S. at 475.  Thus, personal jurisdiction generally lies when an

individual has intentionally associated with the forum state through judicially

cognizable ties, such as the execution of a contract with a resident or the

commission of a tortious act in the forum.  See id.; cf. Kulko v. Superior Court, 436

U.S. 84, 94-97 (1978) (finding that forum lacked personal jurisdiction when

---

[5] Minimum contacts analysis applies to circumstances in which "specific jurisdiction" is asserted—"where the plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum."  Pinker, 292 F.3d at 368.  In contrast, courts may exercise "general jurisdiction" over all claims against a defendant, regardless of the relation of the claims to the forum contacts, "when a defendant's contacts with the forum are 'continuous and systematic.'"  Id. (quoting Int'l Shoe, 326 U.S. at 317).  Because the court finds that specific jurisdiction exists based upon Adams's contacts related to the instant action, it need not address whether Adams's other contacts are so "continuous and systematic" as to allow the court to exercise "general jurisdiction."

defendant did not "visit[] physical injury on either property or persons within the [forum] State").

With regard to tortious conduct, the "effects test" is used to determine if personal jurisdiction may be exercised.  See Calder v. Jones, 465 U.S. 783, 788-90 (1984); IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 261 (3d Cir. 1998); Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 n.2 (3d Cir. 2004).  Under this test, a plaintiff must demonstrate that (1) the defendant committed an intentional tort, (2) the tort was aimed at the forum in which the action was brought, and (3) the forum was the "focal point of the harm" suffered.  IMO Indus., 155 F.3d at 261; Miller, 384 F.3d at 96 n.2.

Application of the effects test to this case demonstrates that the court may exercise personal jurisdiction over Adams.  The complaint alleges that Adams directed and published several defamatory communications in this forum, and that Lackey—acting on Adams's behalf—republished these communications to third parties.  The complaint and evidence of record arguably suggest that this forum was the focal point of the harm.[6]  (See Doc. 160 ¶¶ 4, 10-11, 20, 22, 26, 34, 35, 39, 42, 46, 53, 57, 70, 72, 78, 93, 100-02, 105-08, 110-12); see also Cateret Sav. Bank, 954 F.2d at 142

---

[6] At a minimum, the complaint avers that the communications sent to Lackey ruined Scott's reputation and relationships with Lackey and other Pennsylvania residents.  (See Doc. 160 ¶¶ 12-14; see also Doc. 217 at 6).  As an aside, the court notes that the substantive content of plaintiff's recent submissions suggests that she is being assisted by someone knowledgeable in the law.  Hence, the court may not be required to engage in a liberal construction of plaintiff's submissions or accord to plaintiff any deference in light of her pro se status.

n.1.  The commission of such intentional torts as alleged would form an adequate relationship among Adams, the causes of action *sub judice*, and the forum to support the exercise of personal jurisdiction.[7]

At this stage, the court must accept Scott's allegations, corroborated by evidence in the form of correspondence and affidavits, of the existence of defamatory communications directed into this forum.  Although the conduct as alleged would establish purposeful availment of the forum sufficient to support the exercise of personal jurisdiction, it is only after a full evidentiary airing of the dispute can the veracity of these allegations, and the propriety of jurisdiction, be finally determined.  See Pinker, 292 F.3d at 368; see also Cateret Sav. Bank, 954 F.2d at 142 n.1.  ("[P]laintiff need only plead [a] prima facie case to survive the initial motion, but must eventually establish jurisdiction by a preponderance of the evidence.").  Until a determination can be made to the contrary, the court will exercise personal jurisdiction over Adams.

---

[7] See Calder, 465 U.S. at 789-90 (finding court had jurisdiction over defendant where intentional and tortious activities aimed at state); Burt v. Bd. of Regents of Univ. Of Nebraska, 757 F.2d 242 (10th Cir. 1985) (holding that due process not violated where defamatory letter mailed from out of state was directed to individuals in state), judgment vacated as moot, 475 U.S. 1063 (1986); Rusack v. Harsha, 470 F. Supp. 285 (M.D. Pa. 1978) (same); see also Gaetano v. Sharon Herald Co., 426 Pa. 179, 182 (Pa. 1967) (stating that defamation occurs in county where letter received, rather than from where it was sent).

An appropriate order will issue. [8]


                                        S/ Christopher C. Conner
                                       CHRISTOPHER C. CONNER
                                       United States District Judge



Dated:          August 11, 2005

---

[8] Although it will preliminarily exercise jurisdiction over Adams, the court concurs that the second amended complaint contains claims previously dismissed by the memorandum and order dated March 25, 2004. (See Doc. 123). To the extent the claims of the second amended complaint are duplicative of those already ruled upon, the motion to dismiss those claims will be granted. Further, given the court's disposition of the instant motion, plaintiff's pending motion (Doc. 169) to preclude the testimony of Adams at trial will be denied as moot.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TERESA ANNE SCOTT,** | : | **CIVIL ACTION NO. 1:02-CV-1586** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **PAMELA WELLINGTON LACKEY** | : | |
| **and EVAN LESLIE ADAMS and** | : | |
| **JANICE MOLINA and DOES 1-50,** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 11th day of August, 2005, upon consideration of defendant

Evan Adams's motion to dismiss (Doc. 209), and for the reasons set forth in the

accompanying memorandum, it is hereby ORDERED that:

1. The motion to dismiss (Doc. 209) is GRANTED to the extent that the claims set forth in the second amended complaint are duplicative of those dismissed by the order of court dated March 25, 2004 (Doc. 123).

2. The motion to dismiss (Doc. 209) is otherwise DENIED without prejudice.

3. The motion (Doc. 169) to preclude testimony is DENIED without prejudice.


       S/ Christopher C. Conner
       CHRISTOPHER C. CONNER
       United States District Judge