UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERESA ANNE SCOTT,            :      CIVIL NO. 1:02-CV-01586
                             :
        Plaintiff            :      (Judge Conner)
                             :
                             :      (Magistrate Judge Smyser)
                             :
                             :
    v.                       :
                             :
PAMELA WELLINGTON,  et al.,   :
                             :
        Defendants           :


## REPORT AND RECOMMENDATION


I. Background and Procedural History.


     The plaintiff, proceeding *pro se*[1], commenced this civil
action by filing a complaint on September 9, 2002.  The plaintiff
filed an amended complaint on July 15, 2003.


     The amended complaint named as defendants Pamela Wellington,
Evan Leslie Adams, Janice Molina, and Does numbered 2 to 50.  The
amended complaint contained state law defamation, invasion of
privacy and conspiracy claims.


     The court's jurisdiction is based on diversity jurisdiction
pursuant to 28 U.S.C. § 1332.

---

     [1]Although the plaintiff is proceeding *pro se*, Judge Conner
has found that the plaintiff is receiving the assistance of
counsel. *Doc. 265 at 12.*  Thus, the plaintiff is not due the
usual deference given to *pro se* litigants. *Id.*

By a Memorandum and Order dated November 21, 2003, the
claims against defendant Molina were dismissed.  The claims
against defendant Molina were dismissed because both Molina and
the plaintiff are citizens of Maryland and, therefore, with
Molina as a defendant there is not complete diversity and the
court does not have subject-matter jurisdiction.

Defendant Wellington filed a motion for judgment on the
pleadings.  Applying Pennsylvania law, by a Memorandum and Order
dated March 25, 2004, the court ruled that the plaintiff's
defamation claims based on statements by defendant Wellington
published before September 9, 2001 are untimely.  Accordingly,
the court granted the motion for judgment on the pleadings with
respect to all of defendant Wellington's statements published
before September 9, 2001.  Only five allegedly defamatory
statements by Wellington were published on or after September 9,
2001.  After conducting a line-by-line review of those
publications, the court concluded that two of those publications
contain only non-defamatory statements of opinions.  The court
granted the motion for judgment on the pleadings as to the two
defamation claims based on those two publications.  As to the
other three publications by defendant Wellington, the court
concluded that, although they consist primarily of non-defamatory
statements of opinion, they contain limited statements of fact
that, when read in context, impute to the plaintiff 1) an

invidious racial animus toward Natives[2] and 2) conduct involving the transmission of sexually obscene e-mails to defendant Adams. The court concluded that those statements are capable of defamatory meaning.  Thus, the court denied the motion for judgment on the pleadings as to those three publications to the extent that the publications contain statements of fact regarding the plaintiff's alleged racial animus toward Natives or regarding allegedly obscene electronic messages that the plaintiff sent to defendant Adams.

The plaintiff filed a second amended complaint on August 12, 2004.  The defendants are Pamela Wellington, Evan Leslie Adams and Does numbered 2 to 50.[3]

The plaintiff alleges the following facts in her second amended complaint.

Defendant Adams is an actor and a medical doctor.  In the course of his business as an entertainer, defendant Adams endorses and participates on two internet sites which serve to promote and further his career.  Defendant Wellington is the operator of the official Evan Adams discussion group, an internet

---

[2] Natives refers to Native-Americans and Native-Canadians.

[3] The second amended complaint also names as a defendant Janice Molina.  Although the second amended complaint, filed after the Memorandum and Order of November 21, 2003 dismissing defendant Molina, continues to name Molina as a defendant, given the Memorandum and Order of November 23, 2003, Molina is no longer a defendant in this case.

forum promoting the entertainment career of defendant Adams.
Elisabeth Kelso owns and operates an internet site about
defendant Adams.  Defendant Wellington and Elisabeth Kelso are
agents of defendant Adams.

The plaintiff has been a member of various internet
communities and discussion groups related to the acting career of
defendant Adams and his contemporaries since 1999.  When
corresponding with others via the internet, the plaintiff uses
the pseudonym "Talking Dreams."  The plaintiff claims that the
defendants defamed her in e-mails and posts on public internet
discussion boards and that persons privy to the alleged
defamatory statements knew that the references in the disputed
publications to "Talking Dreams" and "TD" were references to her.

The communications and messages that the plaintiff contends
were defamatory include statements: accusing the plaintiff of
sending sexually obscene e-mail messages to defendant Adams and
other celebrities, characterizing the plaintiff's behavior
towards defendant Adams and his contemporaries as harassment or
stalking, claiming that the plaintiff is mentally unstable and
dangerous, claiming that the plaintiff has shown racial animus
towards Natives and claiming that the plaintiff has sexual
motivation for her dealings with Natives.  The plaintiff alleges
that these communications contained false statements that
destroyed her reputation both on the internet and in her home
community.  The plaintiff alleges that her career as a freelance

writer has suffered due to the defamatory statements of the
defendants.

The second amended complaint contains three counts.  Count I
contains defamation claims.  Count II is an invasion of privacy
claim.  Count III is a conspiracy claim.

On September 1, 2004, defendant Wellington filed an answer
to the second amended complaint.

On September 7, 2004, the court granted the plaintiff's
motion for a default judgment against defendant Adams but the
Clerk of Court was directed to defer entry of judgment until
damages could be determined.  On May 5, 2005, the default and
default judgment against defendant Adams were set aside because
defendant Adams had not been properly served with process.  The
plaintiff was given leave to effect service upon defendant Adams.

Following service, defendant Adams filed a motion to dismiss
the complaint asserting that the court lacks personal
jurisdiction over him.  Defendant Adams' motion to dismiss for
lack of personal jurisdiction was denied without prejudice by a
Memorandum and Order dated August 11, 2005.  The court determined
that "[a]t this stage, the court must accept [the plaintiff's]
allegations, corroborated by evidence in the form of
correspondence and affidavits, of the existence of defamatory
communications directed into this forum" and noted that
"[a]lthough the conduct as alleged would establish purposeful

availment of the forum sufficient to support the exercise of
personal jurisdiction, it is only after a full evidentiary airing
of the dispute can the veracity of these allegations, and the
propriety of jurisdiction, be finally determined." *Doc. 224* at 8.
The court determined that it would exercise personal jurisdiction
over defendant Adams "until a determination can be made to the
contrary." *Id.*  The court also dismissed the claims set forth in
the second amended complaint that are duplicative of those
dismissed by the order of court dated March 25, 2004.

On August 25, 2005, defendant Adams filed an answer to the
second amended complaint.

In response to a motion for reconsideration filed by
defendant Adams, by an Order dated January 11, 2006, the court
dismissed the invasion of privacy and conspiracy claims to the
extent that those claims are based upon the same publications as
the defamation claims that were dismissed by the Order dated
March 25, 2004.

The case was stayed for a period of time due to the
bankruptcy of defendant Wellington.  By an Order dated June 7,
2007, the stay was lifted.

By an Order dated December 10, 2007, the court granted in
part and denied in part the plaintiff's motion to alter or amend
the Order dated March 25, 2004 which had granted in part and
denied in part defendant Wellington's motion for judgment on the

pleadings.   In connection with her motion to alter or amend, the
plaintiff contended that communications between defendant
Wellington and Annie Nordbo in February and March 2001 are not
time barred because the discovery rule tolled the statute of
limitations until she learned of these communications in December
of 2001.   The court determined that "[t]aken as true, the
allegations of the complaint are sufficient, at the judgment on
the pleadings stage, to invoke the discovery rule for the claims
based on the February and March 2001 communications between
Wellington and Nordbo." *Doc. 265* at 8.   Since the plaintiff filed
the original complaint within one year of allegedly learning of
these communications, the court determined that judgment on the
pleadings for the claims based on these communications is not
warranted on the basis of the statute of limitations.   The court
then evaluated those communications to determine if they are
capable of defamatory meaning.   After conducting a line-by-line
review of the February and March 2001 communications between
Wellington and Nordbo, the court held that these communications
consist primarily of non-actionable statements of pure opinion.
However, the court determined that these communications contain
limited statements of fact capable of defamatory meaning that
impute to the plaintiff 1) an invidious racial animus toward
Natives, 2) the transmission of sexually explicit letters, e-
mails, and tapes and 3) a sexual motivation for her dealings with
Natives.   The court vacated the Order of March 25, 2004 to the
extent that it granted judgment on the pleadings with respect to
claims relating to defendant Wellington's publications attached

to the amended complaint as exhibits 1, 3, 5-7, 18-19 and 25[4].
The court also vacated the Orders of August 11, 2005 and January
11, 2006 to the extent that they dismissed claims relating to
defendant Wellington's publications attached to the amended
complaint as exhibits 1, 3, 5-7, 18-19 and 25.  The court ruled
that the defamation claims relating to defendant Wellington's
publications attached to the amended complaint as exhibits 1, 3,
5-7, 18-19 and 25 shall proceed only to the extent that those
publications contain statements of fact regarding 1)the plaintiff
having a racial animus toward Natives, 2) the transmission by the
plaintiff of sexually explicit letters, e-mails, and tapes, and
3) a sexual motivation for the plaintiff's dealings with Natives.

The discovery period has closed.  May 14, 2008 was the
deadline for filing dispositive motions.

On May 14, 2008, defendant Adams filed a motion for summary
judgment, a LR 56.1 statement of facts, a brief in support and
documents in support of that motion.  After requesting and
receiving an extension of time, on June 13, 2008, the plaintiff
filed a response to defendant Adams' statement of facts, a brief
in opposition and documents in opposition to the motion for
summary judgment.  Defendant Adams filed a reply brief on June
30, 2008.

---

[4] The exhibits attached to the amended complaint are the
same and are numbered the same as the exhibits attached to the
second amended complaint.

The case was referred to this magistrate judge by Order of
January 9, 2009.

II. Summary Judgment Standard.

Summary judgment is appropriate if the "pleadings, the
discovery and disclosure materials on file, and any affidavits
show that there is no genuine issue as to any material fact and
that the movant is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(c).  The moving party bears the initial
responsibility of informing the court of the basis for its motion
and identifying those portions of the record which demonstrate
the absence of a genuine issue of material fact. *Celotex Corp. v.
Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on
which the nonmoving party bears the burden of proof, the moving
party may discharge that burden by "'showing'-- that is, pointing
out to the district court -- that there is an absence of evidence
to support the nonmoving party's case." *Id.* at 325.  Once the
moving party has met its burden, the nonmoving party may not rest
upon the mere allegations or denials of its pleading; rather, the
nonmoving party must "set out specific facts showing a genuine
issue for trial."  Fed.R.Civ.P. 56(e)(2).

A material factual dispute is a dispute as to a factual
issue that will affect the outcome of the trial under governing
law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
"Only disputes over facts that might affect the outcome of the

9

suit under the governing law will properly preclude the entry of summary judgment." *Id.*

Summary judgment is not appropriate when there is a genuine dispute about a material fact. *Id.* at 248. An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson, supra,* 477 U.S. at 249-50. In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249. The proper inquiry of the court in connection with a motion for summary judgement "is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact

because they may reasonably be resolved in favor of either party." *Id.* at 250.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

III. Undisputed Facts.

The following facts are not in dispute for purposes of defendant Adams' motion for summary judgment.

The plaintiff has, at all relevant times, been a resident of the State of Maryland. *Doc. 304* at ¶1 and *Doc. 317* at ¶1.  The plaintiff has used the e-mail name "Talking Dreams" since 1999. *Id.* at ¶20.

Defendant Adams is a citizen of Canada and a resident of British Columbia. *Id.* at ¶2.  Defendant Adams has never resided in the Commonwealth of Pennsylvania. *Id.*  Aside from trips to

11

Pennsylvania in connection with this lawsuit, defendant Adams has
visited Pennsylvania on only two occasions - the first time for a
brief acting job in 1996 and the second time on November 14,
2002, after this lawsuit was filed, for a college speaking
engagement.  *Id.* at ¶3.

Professional acting has not been defendant Adams' primary
vocation since 1998, when he entered medical school. *Id.* at ¶4.

In a paper filed in a previous Maryland federal court action
raising defamation claims against defendant Adams, the plaintiff
stated that the brunt of her "injuries are felt by Plaintiff in
the State in which she lives and works, *the State of Maryland*.
Defendants['] actions were intended to directly harm Plaintiff's
reputation and were therefore aimed at the State of Maryland."
*Id.* at ¶6.

An internet forum call the Evan Adams "list" or "discussion
group" was created by an individual named Jenni whose e-mail
address was <u>Inmajeans@aol.com.</u> *Id.* at ¶8.  The site was never
owned by defendant Wellington. *Id.*  For a period of time,
defendant Wellington was a moderator of the Adams list. *Id.* at
¶9.  While serving as a moderator of the Adams list, defendant
Wellington was unable to change the official rules of the list
that had been established by Jenni. *Id.* at ¶14.  The rules were
automatically sent out each month to the list participants. *Id.*

Defendant Adams occasionally gave permission to defendant Wellington to share information on the Sherman Alexie list or the Adams list about things related to Sherman Alexie and movies coming out and other such very general information. *Id.* at ¶16. Defendant Adams did not employ defendant Wellington as a paid employee. *Id.* at ¶17.

Defendant Adams denies that the Adams list was an "official Evan Adams" site or that he ever owned, authorized, sanctioned, approved, endorsed, controlled, or posted to the Adams list. *Id.* at ¶19.

IV.   Discussion.

Defendant Adams contends that he is entitled to summary judgment because the court lacks personal jurisdiction over him. In that alternative, defendant Adams seeks summary judgment on the merits of the plaintiff's defamation, invasion of privacy and conspiracy claims.

A. Personal Jurisdiction.

By a Memorandum and Order dated August 11, 2005, the court denied without prejudice defendant Adams' motion to dismiss for lack of personal jurisdiction.  After setting forth the standard of review for a motion to dismiss for lack of personal jurisdiction, the court analyzed the issue as follows:

13

Under Federal Rule of Civil Procedure 4(k)(1)(A), district courts may exercise personal jurisdiction over any party "who could be subjected to the jurisdiction of a court of . . . the state in which the district court is located." FED.R.CIV.P. 4(k)(1)(A). Pennsylvania law provides that "the jurisdiction of the tribunals of this Commonwealth shall extend to all persons . . . to the fullest extent allowed under the Constitution of the United States." 42 PA.CONS.STAT. § 5322(a)-(b). Courts have consistently interpreted this provision as making jurisdiction under Pennsylvania law coextensive with jurisdiction under the 14th Amendment. Santana Prods., Inc. v. Bobrick Washroom Equip., 14 F. Supp. 2d 710, 713 (M.D. Pa.1998); Kubik v. Letteri, 614 A.2d 1110, 1113-14 (Pa. 1992). Thus, the dispositive issue is whether Pennsylvania courts could constitutionally exercise jurisdiction over the party.

Proceeding then to the constitutional inquiry, the court's decision is guided by the familiar "minimum contacts" test enunciated in International Shoe Co. v. Washington, 326 U.S. 310 (1945), and refined by its prodigious progeny. See, e.g.,Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985); World-Wide VolkswagenCorp. v. Woodson, 444 U.S. 286, 297 (1980). Under this standard, the exercise of personal jurisdiction is permissible if the defendant "purposefully established'minimum contacts' in the forum State," and the assertion of jurisdiction comports with "traditional conception[s] of fair play and substantial justice." Burger King,471 U.S. at 464, 474 (quoting Int'l Shoe, 326 U.S. at 316, 320).

The minimum contacts analysis focuses on whether the defendant has, by some act related to the plaintiff's current cause of action,[footnote 5] "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958), quoted in Burger King, 471 U.S. at 475. As the Supreme Court has stated:

> This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or a third person." Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State.

Burger King, 471 U.S. at 475. Thus, personal jurisdiction generally lies when an individual has intentionally associated with the forum state through judicially cognizable ties, such as the execution of a

contract with a resident or the commission of a
tortious act in the forum. <u>See id.</u>; <u>cf.</u> <u>Kulko v.
Superior Court</u>, 436 U.S. 84, 94-97 (1978)(finding that
forum lacked personal jurisdiction when defendant did
not "visit[] physical injury on either property or
persons within the [forum] State").

> [footnote 5] Minimum contacts analysis
> applies to circumstances in which "specific
> jurisdiction" is asserted—"where the
> plaintiff's cause of action is related to or
> arises out of the defendant's contacts with
> the forum." <u>Pinker</u>, 292 F.3d at 368. In
> contrast, courts may exercise "general
> jurisdiction" over all claims against a
> defendant, regardless of the relation of the
> claims to the forum contacts, "when a
> defendant's contacts with the forum are
> 'continuous and systematic.'" <u>Id.</u> (quoting
> <u>Int'l Shoe</u>, 326 U.S. at 317). Because the
> court finds that specific jurisdiction exists
> based upon Adams's contacts related to the
> instant action, it need not address whether
> Adams's other contacts are so "continuous and
> systematic" as to allow the court to exercise
> "general jurisdiction."

With regard to tortious conduct, the "effects
test" is used to determine if personal jurisdiction may
be exercised. <u>See</u> <u>Calder v. Jones</u>, 465 U.S. 783, 788-
90(1984); <u>IMO Indus., Inc. v. Kiekert AG</u>, 155 F.3d 254,
261 (3d Cir. 1998); <u>Miller Yacht Sales, Inc. v. Smith</u>,
384 F.3d 93, 96 n.2 (3d Cir. 2004). Under this test, a
plaintiff must demonstrate that (1) the defendant
committed an intentional tort, (2) the tort was aimed
at the forum in which the action was brought, and (3)
the forum was the "focal point of the harm" suffered.
<u>IMO Indus.</u>, 155 F.3d at 261; <u>Miller</u>, 384 F.3d at 96 n.2.

Application of the effects test to this case
demonstrates that the court may exercise personal
jurisdiction over Adams. The complaint alleges that
Adams directed and published several defamatory
communications in this forum, and that Lackey — acting
on Adams's behalf — republished these communications to
third parties.  The complaint and evidence of record
arguably suggest that this forum was the focal point of
the harm.[footnote 6] (See Doc. 160 ¶¶ 4, 10-11, 20,
22, 26, 34, 35, 39, 42, 46,53, 57, 70, 72, 78, 93, 100-
02, 105-08, 110-12); <u>see also</u> <u>Cateret Sav. Bank</u>, 954
F.2d at 142 n.1. The commission of such intentional
torts as alleged would form an adequate relationship
among Adams, the causes of action *sub judice*, and the

15

forum to support the exercise of personal
jurisdiction.[footnote 7]

[footnote 6] At a minimum, the complaint
avers that the communications sent to Lackey
ruined Scott's reputation and relationships
with Lackey and other Pennsylvania residents.
(See Doc. 160 ¶¶ 12-14; see also Doc. 217 at
6). As an aside, the court notes that the
substantive content of plaintiff's recent
submissions suggests that she is being
assisted by someone knowledgeable in the law.
Hence, the court may not be required to
engage in a liberal construction of
plaintiff's submissions or accord to
plaintiff any deference in light of her pro
se status.

[footnote 7] See Calder, 465 U.S. at 789-90
(finding court had jurisdiction over
defendant where intentional and tortious
activities aimed at state); Burt v. Bd. of
Regents of Univ. of Nebraska, 757 F.2d 242
(10th Cir. 1985) (holding that due process
not violated where defamatory letter mailed
from out of state was directed to individuals
in state), judgment vacated as moot, 475 U.S.
1063 (1986); Rusack v. Harsha, 470 F. Supp.
285 (M.D. Pa. 1978) (same); see also Gaetano
v. Sharon Herald Co., 426 Pa. 179, 182 (Pa.
1967) (stating that defamation occurs in
county where letter received, rather than
from where it was sent).

At this stage, the court must accept Scott's
allegations, corroborated by evidence in the form of
correspondence and affidavits, of the existence of
defamatory communications directed into this forum.
Although the conduct as alleged would establish
purposeful availment of the forum sufficient to support
the exercise of personal jurisdiction, it is only after
a full evidentiary airing of the dispute can the
veracity of these allegations, and the propriety of
jurisdiction, be finally determined. See Pinker, 292
F.3d at 368; see also Cateret Sav. Bank, 954 F.2dat 142
n.1. ("[P]laintiff need only plead [a] prima facie case
to survive the initial motion, but must eventually
establish jurisdiction by a preponderance of the
evidence.").  Until a determination can be made to the
contrary, the court will exercise personal jurisdiction
over Adams.

*Doc. 224* at 5-8.

Defendant Adams contends that he is entitled to summary judgment because the court lacks personal jurisdiction over him. Summary judgment is not the preferred method to address issues of personal jurisdiction. *See Marten v. Godwin,* 499 F.3d 290, 295 n.2 (3d Cir. 2007). Nevertheless, since the issue is before us in connection with a motion for summary judgment we must assess the issue under the standard set forth in Fed.R.Civ.P. 56. *Id.*

Defendant Adams contends that there is no nexus between Pennsylvania and the plaintiff's claims against him. Defendant Adams contends that there is no evidence that any of the allegedly defamatory communications by him specifically targeted the plaintiff, a Maryland resident, in Pennsylvania or that the plaintiff felt the brunt of any alleged harm in Pennsylvania.

Defendant Adams contends that none of the allegedly defamatory e-mails attached to the second amended complaint are from him.[5] He contends that there is no evidence that he transmitted any e-mail communications to defendant Wellington in Pennsylvania after September 8, 2001 (the presumptive cutoff date for statute of limitations purposes given that the plaintiff filed her complaint in this case on September 9, 2002). Therefore, defendant Adams argues, any claims against him based on statements that he allegedly transmitted to defendant

---

[5] Exhibit 27 to the second amended complaint is an e-mail dated March 1, 2001 from defendant Adams to Annie Nordbo. There is nothing in that e-mail that is capable of defamatory meaning.

17

Wellington in Pennsylvania are time-barred and can not supply the
required nexus for personal jurisdiction.

The plaintiff has not presented evidence that defendant
Adams transmitted any communications to defendant Wellington in
Pennsylvania after September 8, 2001.  However, the plaintiff
contends that defendant Adams' conduct was hidden from her and
thus subject to the discovery rule.  Defendant Adams has not
specifically briefed the statute of limitations defense.  Thus,
we make no determination on that issue in this Report and
Recommendation.

In any event, the plaintiff's claims against defendant Adams
are not based solely on his communications to defendant
Wellington in Pennsylvania.  Rather, the plaintiff also claims
that defendant Wellington was an agent of defendant Adams and
that she, acting on behalf of defendant Adams, made defamatory
statements to third parties.  Although defendant Adams disputes
that defendant Wellington was his agent, the court has already
determined that there is evidence upon which a reasonable jury
could find that defendant Wellington was defendant Adams' agent.
*See Doc. 224* at 2 n.2 ("Although Adams denied that Lackey[6]acted
as his agent, there are affidavits and correspondence of record
upon which a reasonable jury could find to the contrary. (Compare
Doc. 179, Att. 2 with Docs. 20, 24; Doc. 217, Att. 1-3, 5)).

---

[6] The original complaint named Pamela Wellington Lackey as a
defendant.  Defendant Wellington was at times previously referred
to as defendant Lackey.

Viewing defendant Wellington as defendant Adams' agent, means that, in effect, defendant Adams was present (through his agent) in this forum.  Given that defendant Wellington sent the allegedly defamatory e-mails at issue in this case from Pennsylvania and that there is evidence from which a reasonable factfinder could conclude that defendant Wellington was defendant Adams' agent, there is evidence from which a reasonable finding could be made that defendant Adams had a sufficient nexus with this forum such that this court may exercise personal jurisdiction over defendant Adams under the traditional specific jurisdiction analysis.[7]  Accordingly, defendant Adams is not entitled to summary judgment on the basis of lack of personal jurisdiction.

    B. Defamation.

    Defendant Adams argues that summary judgment should be granted in his favor on the plaintiff's defamation claims.

    In the Memorandum and Order of March 25, 2004, Judge Conner determined that three e-mails from defendant Wellington to Annie Nordbo were within the statute of limitations and contained

---

    [7] Although cut from the same cloth, the traditional specific jurisdiction analysis and the effects test are different. *Marten, supra,* 499 F.3d at 297.  Given our conclusion there is evidence from which a reasonable finding can be made that personal jurisdiction is proper under the traditional specific jurisdiction analysis, we do not need to address the effects test.

statements capable of defamatory meaning.  The court denied
defendant Wellington's motion for judgment on the pleadings as to
those three publications to the extent that the publications
contain statements of fact regarding the plaintiff's alleged
racial animus toward Natives or regarding allegedly obscene
electronic messages that the plaintiff sent to defendant Adams.[8]
In the Memorandum and Order of December 10, 2007, Judge Conner
determined that eight additional e-mails from defendant
Wellington to Annie Nordbo were capable of defamatory meaning and
that, taking the allegations of the complaint as true, and given
the discovery rule, it was not apparent from the face of the
complaint that the defamation claims based on those publications
were barred by the statute of limitations.  The Order of December
10, 2007 noted that the defamation claims relating to those
publications contain statements of fact regarding 1) the
plaintiff's racial animus toward Natives, 2) the transmission by
the plaintiff of sexually explicit letters, e-mails, and tapes,
and 3) a sexual motivation for the plaintiff's dealings with
Natives.[9]

    Defendant Adams contends that there is not evidence that he
made any statements regarding plaintiff having a racial animus
toward Natives or regarding plaintiff having a sexual motivation
for her dealings with Natives.  However, as indicated above,

---

[8] Those three publications are exhibits 38, 39 & 41 to the
second amended complaint. *See Doc. 215.*

[9] Those eight publications are exhibits 1, 3, 5, 6, 7, 18, 19
& 25 to the second amended complaint. *See Doc. 215.*

there is a material factual dispute about whether defendant
Wellington was acting as an agent for defendant Adams when she
made statements, which the court has already determined are
capable of defamatory meaning, regarding the plaintiff having a
racial animus toward Natives and regarding the plaintiff having a
sexual motivation for her dealings with Native.  Accordingly,
defendant Adams is not entitled to summary judgment on these
claims.

    Defendant Adams contends that there is no genuine factual
dispute that the plaintiff sent him sexually explicit
communications.  Thus, defendant Adams contends, he is entitled
to summary judgment on the defamation claims based on
publications that contain statements that the plaintiff sent him
sexually explicit communications.

    "Truth is an absolute defense to a defamation claim." *Bakare
v. Pinnacle Health Hospitals, Inc.,* 469 F.Supp.2d 272, 298
(M.D.Pa. 2006)(Conner, J.).  *See also* 42 Pa. C.S.A. § 8343(b).
In a case where the plaintiff is not a public figure and where
the alleged defamatory statements are not about a matter of
public concern, the defendant bears the burden of proving that
the alleged defamatory statements are substantially true. *See
Simms v. Exeter Architectural Products, Inc.,* 916 F.Supp. 432,
437 (M.D.Pa. 1996)(Conaboy, J.).

    Defendant Adams contends that there is overwhelming evidence
in plaintiff's own words that she sent him sexually oriented and

sexually explicit messages.  In support of that contention,
defendant Adams points to the plaintiff's deposition where she
testified that she sent defendant Adams e-mails that contained
sexual content and raunchy humor.  *Doc. 304-3* at 39 & *Doc. 327* at
1-2).  Defendant Adams also points to the plaintiff's deposition
where the plaintiff testified that one of her e-mails was a
fantasy which contained a disclaimer at the end and that in one
e-mail she communicated something taken off an adult site and
modified. *Doc. 304-3* at 40.  However, the plaintiff testified at
her deposition that there was nothing graphic about her e-mails
to defendant Adams. *Doc. 304-3* at 40-41.  She testified that
there was nothing that would not pass in prime time TV. *Id.* at
41.

Defendant Adams also points to an audio tape that the
plaintiff, along with other fans of defendant Adams, recorded
with Birthday wishes for defendant Adams.  The plaintiff stated
*inter alia* the following on the tape:

> Hi, Dr. Sweetie Pie.  This is Talking Dreams....
> Well, I think you already know how I feel about you.
> I'm not ashamed to admit that I love you.  I do, and
> that's just it, and you're going to have to live with
> that knowledge.  It's your own fault.  Do you have any
> idea of the raw sexual energy you exude?  You are
> surrounded by a sensual aura that is unlike anything I
> have ever seen before.  Oh, geez, I don't know.  It's
> your eyes, your face, that voice, and it's your mouth.
> Your mouth is just so ... so inviting.  Oh it's getting
> warm in here.  Wait, is it warm there?  Wait, I think
> it's getting warm.  Let me get a ... let me open a
> window.  Oh, okay, now, let's see.  Now where was I?  Oh
> yeah, the sensual rawness, the sensuality that radiates
> from you, oh but, none of this is for me, is it?
> You're not interested in me; I know that.  I know it,
> but I'm still working on accepting it.  I'm trying to
> adjust to the fact that I can never be more than the
> close, personal confidante, amigo-type friend that I am

to you now.  Well, enough about me and my emotional
distress. . . . I know you're busy with the movie star
life and the doctor school stuff, so I'll leave you
with this.  Life is really, really short.  Make
yourself happy, Evan. Do whatever makes you feel good.
Don't waste valuable time doing anything that does not
make you happy.  And ... if you can't be happy, at
least you know you could make me happy.  And you know
what I mean.  You know what I want.  I really want to
see you naked.  You know that.  And so I just thought
I'd toss that out there. . . .    And now, let's see.
Now there's my orgasm quiz.  I definitely want to make
sure you understand this orgasm quiz.  Okay?
[Unintelligible]  This is what I want you to find out,
'cause you and your doctor friends should be able to
figure this out.  And if you can't, you need to go
right back to doctor school.  Okay, there's something
that happens immediately following orgasm to me.  It's
a physical change, and I'll give you a hint, it
occurs... [[10]] Evan, It's Talking Dreams again.  I have
not idea how much of my other message got through
because I don't know all this technical stuff.

*Doc. 304-2* at 8-13.


Defendant Adams points to a November 12, 2000 e-mail message

from the plaintiff to defendant Adams in which the plaintiff

states *inter alia*:

Fear not!  I have launched a full investigation into
the matter of someone saying something filthy on your
birthday tape! . . . I LOVE YOU AND ADORE YOU AND I
THINK YOU ARE MORE WONDERFUL EVERY TIME YOU SAY
ANYTHING ANYWHERE?

---

[10] The plaintiff states that the tape had been stopped before
the following words: "above the waist and it is a condition I
have also experienced a few times as a I was about to faint."
*Doc. 325* at 8, ¶24.   The plaintiff states that she then went on
to suggest the mystery would make a great extra credit question
for medical students. *Id.*  She states that defendant Adams was
studying for an OB/GYN exam at the time. *Id.*  It is not clear if
the plaintiff is contending that the transcript of the tape is
inaccurate or that the tape that was actually sent to defendant
Adams did not contain the missing information.  In any event, the
missing material is not germane to the outcome of the instant
summary judgment motion.

*Doc. 304-3* at 50-51.  Defendant Adams also points to a February 28, 2001 e-mail message from the plaintiff to defendant Adams in which the plaintiff states *inter alia:*

> I have never had the slightest interest in you as a man.  I was told that you were depressed and have very low self esteem.  That you could never consider yourself attractive to women and that any "fawning over you from a fan" would probably do a lot to boost your self esteem.  I took time out of my day, to do such fawning, to be a fan who was smitten with you, IN AN EFFORT TO MAKE YOU FEEL GOOD.  The little bit of feedback I got from you, indicated it was working.

*Doc. 304-3* at 58.[11]

Defendant Adams also points to the fact that the plaintiff admits sending three e-mails to Sherman Alexie that had sexual content. *Doc. 304* at ¶31 and *Doc. 317* ¶31.  The plaintiff admits that in one of those e-mails she stated: "I have been stricken with an overwhelming desire to see Evan Adams naked.  I would be greatly indebted to you if you would write him a very hot, very naked love scene for your next film.  Please??" *Id.* at ¶ 32.  The plaintiff admits that Sherman Alexie blocked her e-mail. *Id.* at ¶33.

There is no dispute that some of the messages from the plaintiff to defendant Adams contain sexual matter.  However, the

---

[11] Defendant Adams also points to two posts allegedly made to the Evan Adams discussion group.  The plaintiff, however, denies ever seeing those posts before, she states that she has no recollection of writing such posts and that there is no information given to authenticate those posts. *Doc. 304* at ¶¶24 & 26 and *Doc.* 317 at ¶¶24 & 26.  Thus, we will not consider those documents in connection with the instant motion.  In any event, nothing in those posts would change the recommendations made in this Report and Recommendation.

actual allegedly defamatory statements in the e-mails from defendant Wellington accuse the plaintiff of sending obscene, disgusting and aweful matter to defendant Adams and others. *See e.g. Doc. 215, Exhibit 1* ("disturbing and obscene e-mails"); *Exhibit 3* ("EXTREMELY OFFENSIVE AND OBSCENE"); *Exhibit 5* ("sexually sick, very disgusting"); *Exhibit 6* ("very sexually weird talk"); *Exhibit 7* ("sexual content of her e-mails to Brent"); *Exhibit 18* ("highly X rated and aweful"); *Exhibit 19* (describing contents of e-mail as fantasies involving S and M, chains, acts of humiliation, and sick stuff); *Exhibit 25* ("obscene and terrible e-mails to Evan, Alexie and Michelle St. John"); and *Exhibit 41* ("disgusting e-mails").[12]  We can not conclude as a matter of law on the present record that it is true that the plaintiff sent obscene communications as described by defendant Wellington.  Accordingly, defendant Adams is not entitled to summary judgment based on the defense of truth.

---

[12]  In the Order of March 25, 2004, Judge Conner denied defendant Wellington's motion for judgment on the pleadings with regard to one publication to the extent that the publication contains statements of fact regarding allegedly obscene electronic messages that the plaintiff sent to defendant Adams. In the Order of December 10, 2007, Judge Conner allowed the defamation claims relating to certain publications made by defendant Wellington to proceed to the extent *inter alia* that those publications contain statements of fact regarding the transmission of sexually explicit letters, e-mails and tapes.  A reasonable construction of  Judge Conner's use of the term "sexually explicit" in this order is that it was merely used as a descriptor to describe the various ways defendant Wellington had described the plaintiff's communications.  Thus, when deciding whether defendant Adams is entitled to summary judgment on the basis of truth, we felt compelled to look at that actual statements made by the plaintiff as compared with the descriptions of the plaintiff's statements by defendant Wellington.

C.   Privacy Claim.

Defendant Adams argues that summary judgment should be granted in his favor on the plaintiff's false light-invasion of privacy claim.

The plaintiff alleges that defendant Adams invaded her privacy by showing to defendant Wellington and another individual private e-mail and mail that she had sent to him. *Doc. 160* at ¶105.  The plaintiff claims that defendant Adams, by showing only parts of said mail, cast the plaintiff in a false light. *Id.* at ¶106. The plaintiff also alleges that defendant Adams published facts about the plaintiff that were private and that he edited such facts in such as way as to cast her in a false light. *Id.* at ¶¶107-108.

"The tort of false light-invasion of privacy involves 'publicity that unreasonably places the other in a false light before the public.'" *Rush v. Philadelphia Newspapers Inc.*, 732 A.2d 648, 654 (Pa.Super.Ct. 1999)(quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa.Super.Ct. 1997).  "A cause of action for invasion of privacy will be found where a major misrepresentation of a person's character, history, activities or beliefs is made that could reasonably be expected to cause a reasonable man to take serious offense." *Id.*  "The elements to be proven are publicity, given to private facts which would be

26

highly offensive to a reasonable person and which are not of legitimate concern to the public." *Id*.

Defendant Adams contends the statements that were true or otherwise not defamatory can not logically be deemed to have cast the plaintiff in a false light.  We have, however, indicated that we can not conclude as a matter of law that the statements that the court has already determined are capable of defamatory meaning were true.  Accordingly, defendant Adams is not entitled to summary judgment on the invasion of privacy claims on this basis.

Defendant Adams also contends that the e-mail activity at issue originated with the plaintiff's uninvited contact with a celebrity and that unilateral contact initiated by a stranger with a public figure can not reasonably be characterized as a private or confidential communication for purposes of an invasion of privacy claim.  The plaintiff, however, contends that it was defendant Adams that first contacted her from his private e-mail to hers. *See Doc. 325* at 3, ¶7.  In any event, we can not say as a matter of law that the plaintiff's false-light invasion of privacy claim is necessarily dependent upon which party initiated the contact.

Defendant Adams also contends that he is entitled to summary judgment on the false-light invasion of privacy claim because the plaintiff voluntarily shared the allegedly private information with others. *See Doc. 215* at Exhibit 23 ("Both pam and liz

assured me on more than one occasion, after I showed them what I wrote to you, that with your sense of humor you would love it."). However, we can not say as a matter law that showing allegedly private information to two individuals necessarily defeats a false-light invasion of privacy claim.

We will not recommend that summary judgment be granted in favor of defendant Adams with respect to the plaintiff's false-light invasion of privacy claim.

D.  Conspiracy Claim.

Defendant Adams argues that summary judgment should be granted in his favor on the plaintiff's civil conspiracy claim.

Defendant Adams argues that "absent an underlying cause of action for a particular act, there can be no separate cause of action for civil conspiracy. . .[t]herefore, if the Court grants summary judgment in [his] favor on counts I and II, the conspiracy claim in count III must also fail." *Doc. 303* at 27. Since we are not recommending that summary judgment be granted in defendant Adams' favor on the plaintiff's defamation and false light-invasion of privacy claims, we will not recommend that defendant Adams be granted summary judgment on the civil conspiracy claim.

V.   Doe Defendants.


     By an Order dated November 24, 2003, the plaintiff was
ordered to identify all Doe defendants before the close of
discovery.  That Order provided that failure to comply with this
deadline shall result in the dismissal of any defendants who
remain unidentified.  Discovery has closed.  The plaintiff has
not identified the Doe defendants.  Accordingly, it is
recommended that the Doe defendants be dismissed.

VI.   Recommendations.


     Based on the foregoing, it is recommended that
defendant Adams' motion (doc. 302) for summary judgment be
denied, that the Doe defendants be dismissed and that the case be
listed for trial.


                              /s/ J. Andrew Smyser
                              J. Andrew Smyser
                              Magistrate Judge

Dated: March 13, 2009.