IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERESA ANNE SCOTT**, | : | CIVIL ACTION NO. 1:02-CV-1586 |
| Plaintiff | : | (Judge Conner) |
| v. | : | |
| **PAMELA WELLINGTON LACKEY**, | : | |
| Defendant | : | |

## MEMORANDUM

Presently before the court in the above captioned matter is plaintiff Teresa Scott's ("Scott") motion for reconsideration (Doc. 404) of this court's memorandum and order (Doc. 345) dated January 20, 2010, granting former defendant Evan Leslie Adams' ("Adams") motion for summary judgment. (Doc. 302). Adams, through counsel, has filed an answer to Scott's motion (Doc. 406), and a brief in opposition. (Doc. 417). Scott has also filed a motion to strike portions of Adams' brief in opposition. (Doc. 420). For the reasons that follow, the court will DENY Scott's motion for reconsideration, and DENY as moot her motion to strike.

### I.     Factual and Procedural Background

The facts of this long-running litigation are well known to the parties, and so only those most pertinent to the instant motion will be reiterated here. Former defendant Adams is a medical doctor who was once also an actor. He is a citizen of Canada who resides in British Columbia. (See Doc. 345 at 11-13). Adams has never lived in Pennsylvania, and has visited the state on only two occasions. (Id.) (citing Doc. 304 ¶ 3; Doc. 317 ¶ 3). Scott is a Maryland resident, and Pam Wellington

("Wellington"), the only remaining defendant in the case, is a resident of Pennsylvania. Adams, along with Wellington, was originally named as a defendant in Scott's diversity defamation action.

On January 20, 2010, this court granted Adams' motion for summary judgment, finding, *inter alia*, that Scott had failed to produce any evidence that Adams had uttered defamatory statements about Scott to Wellington – or anyone else – in the forum state. (See Doc. 345 at 24). More specifically, the court wrote:

> In fact, Scott has produced no evidence that Adams engaged in any tortious activity, let alone that he intentionally aimed that activity at the forum. What is more, Scott is a resident of Maryland and she has admitted that the brunt of her harm was felt in her home state, not in Pennsylvania. (See Doc. 336 at 12). Thus, Scott is unable to satisfy any of the Calder effects test prongs and the court is therefore without specific jurisdiction. Summary judgment is warranted.

(Doc. 345 at 25).

In her motion for reconsideration, Scott argues that newly discovered evidence necessitates reconsideration of the court's previous ruling. In particular, she avers that at the May 30, 2012 pretrial conference, Wellington produced "a previously undisclosed email written by Adams, to Wellington on January 29, 2001." (Doc. 404 at 3). Scott claims that she had never seen this email before the pretrial conference, that it was improperly withheld from disclosure by Wellington, and that the email contains defamatory statements[1] made by Adams to Wellington, in the

---

[1] The statements that Scott alleges are defamatory include Adams' statement that Scott sent him sexually explicit emails, and his suggestion that Scott may be "mentally unbalanced" and suffering from "erotomania." (Doc. 404, Ex. 1).

2

forum state, sufficient to establish specific personal jurisdiction over Adams. She asks the court to reinstate all claims against Adams.

When asked at the pretrial conference when she had discovered the email, Wellington stated that she found it among four large boxes of documents that she had given to her former attorney James Flowers approximately ten years ago, and which she had picked up about three weeks prior to the conference. (See Hearing Transcript, Doc. 385 at 52, ll. 7-17). After the hearing, Scott moved for sanctions against Wellington for failing to disclose this letter (Doc. 390), a request that the court denied (Doc. 402) because, to the extent Wellington did in fact fail to disclose the letter, it was inadvertent, and the content of the email was consistent with Adams' deposition testimony.

Adams, through counsel, filed an answer to Scott's motion for reconsideration. The matter is now ripe for disposition.

## II. Discussion

Motions for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure serve primarily to correct analytical errors in a prior decision of the court. See FED. R. CIV. P. 59(e); United States v. Fiorelli, 337 F.3d 282, 287-88 (3d Cir. 2003). Under Rule 59(e), "a judgment may be altered or amended if the party seeking reconsideration establishes at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."

Scott v. Warden, F.C.I. Schuylkill, No. 3:06-CV-1790, 2007 WL 3334997, at *1 (M.D. Pa. Nov. 9, 2007) (citing Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999)).  It follows from this remedial purpose that the standard of review for a motion for reconsideration relates back to the standard applicable in the underlying decision.  United States v. Fiorelli, 337 F.3d 282, 287-88 (3d Cir. 2003); Pittsburgh Terminal Corp. v. Balt. & Ohio R.R., 824 F.2d 249, 253 (3d Cir. 1987).

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident of the forum state only to the extent authorized by the law of the forum.  FED. R. CIV. P. 4(k)(1)(A).  Pennsylvania law allows for jurisdiction coextensive with that which is permitted by the Due Process Clause of the Constitution.  42 PA. CONS. STAT. § 5322(b).  Therefore, for personal jurisdiction to be proper, its exercise must comport with federal law.

A federal court entertaining a suit must possess one of two forms of personal jurisdiction over each defendant.  The first type, known as specific jurisdiction, requires that the plaintiff's claim arise from the defendant's contacts with the forum in which the court sits.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984); Telcordia Tech Inc. v. Telkom S.A., 458 F.3d 172, 177 (3d Cir. 2006).  In contrast, the court may exercise general jurisdiction over a defendant who possesses systematic and continuous contacts with the forum regardless of whether the plaintiff's claim derives from the defendant's in-forum activities.  Helicopteros, 466 U.S. at 415 n.9; Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007).  The court

must determine whether to exercise either form of jurisdiction in light of the "relationship among the defendant, the forum, and the litigation." Helicopteros, 466 U.S. at 414 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). Scott does not contend that Adams maintains systematic and continuous contacts with Pennsylvania, but argues that specific jurisdiction is proper because of Adams' contacts with the state. She alleges that, in light of the newly discovered email, Adams has committed a tortious act within the state of Pennsylvania – defamation – sufficient to confer jurisdiction on this court.

Specific jurisdiction allows the court to adjudicate claims levied against defendants with "certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations omitted). The minimum contacts analysis focuses on whether the defendant has, by some act related to the plaintiff's current cause of action, "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Specific jurisdiction generally lies when an individual has intentionally associated with the forum state through judicially cognizable ties, such as the execution of a contract with a resident or the commission of a tortious act in the forum. See IMO Indus. v. Kiekert AG, 155 F.3d 254, 259-60 (3d Cir. 1998). However, the "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the

5

requirement of contact with the forum State." Burger King, 471 U.S. at 474 (quoting Hanson, 357 U.S. at 253).

When a defendant is charged with committing an intentional tort, the court's jurisdictional inquiry is guided by the "Calder effects test." See Calder v. Jones, 465 U.S. 783, 788-90 (1984); Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 n.2 (3d Cir. 2004); IMO Indus., 155 F.3d at 261. The Calder effects test allows a court to "exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside the forum which have a particular type of effect upon the plaintiff within the forum." IMO Indus., 155 F.3d at 261. Satisfaction of this test requires that a plaintiff establish that "(1) [t]he defendant committed an intentional tort; (2) [t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort; [and] (3) [t]he defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." Marten, 499 F.3d at 297 (quoting IMO Indus., 155 F.3d at 265-66). To satisfy the final element of the test, the plaintiff must (a) demonstrate that "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum," and (b) "point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." Id. at 298 (quoting Imo Indus., 155 F.3d at 265).

Assuming *arguendo* that the instant email does contain defamatory statements, Scott satisfies the first part of the IMO Industries test, because

defamation is an intentional tort.  See Remick v. Manfredy, 238 F.3d 248, 258 (3d Cir. 2001).  In considering whether Scott satisfies the latter two parts of the IMO Industries test, Remick is instructive.  That case involved a defamation action brought in Pennsylvania by a Pennsylvania resident, against defendants from Indiana and Illinois.  Id. at 255.  The defamation claims arose out of a single letter that each defendant had faxed to the plaintiff in Pennsylvania, purportedly containing defamatory statements.  Id.  Remick argued that personal jurisdiction existed in Pennsylvania because the "defamatory statements targeted a Pennsylvania resident's forum-related activities and were published in Pennsylvania."  Id. at 258.

The court held that Remick had satisfied the first two parts of the IMO Industries test because defamation is an intentional tort, and because Remick was a Pennsylvania resident whose professional activities (upon which the letters cast aspersions) were centered in Pennsylvania, arguably demonstrating that Remick suffered the brunt of the harm in the forum state.  Id.  However, the court held that personal jurisdiction did not exist because the letters had been addressed to Remick personally, and there was no indication that the defendants had "expressly aimed their conduct at Pennsylvania so that Pennsylvania was the focal point of the tortious activity."  Id. at 259.

Although the Third Circuit found jurisdiction lacking based on the third part of the IMO Industries test, its discussion with regard to the second part is instructive because it discusses how the state in which reputational damages are

felt impacts the jurisdictional analysis.  Unlike the plaintiff in Remick, Scott has failed to satisfy the second part of the IMO Industries test.  Scott lives and works in Maryland, and has indicated that the brunt of her reputational injuries were felt in Maryland.  (See Doc. 336 at 12).  While this court's opinion dismissing the claims against Adams for lack of jurisdiction focused principally on the lack of an agency relationship between Adams and Wellington, and the dearth of any evidence that he had committed a tort at all, the court noted Scott's admission that her injuries were felt predominantly in Maryland.  (See Doc. 345 at 24).  The plaintiff in Remick was a Pennsylvania attorney, and because the allegedly defamatory emails impugned his professional ability, it was fair to state that the forum state was the locus of his injury.  Remick, 238 F.3d at 258; see also Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780 (1984) (recognizing that most defamation plaintiffs feel the brunt of the injury primarily in their home state).  But even assuming that the instant email was not disclosed, that it contains actionable statements, and that it was intentionally aimed at the forum state, Scott has *still* failed to show that the brunt of the harm was felt in Pennsylvania.  She has therefore failed to establish that personal jurisdiction exists over Adams.

**III.** **Conclusion**

After reviewing the filings in the instant motion, the court finds that it is without personal jurisdiction over Adams, and that reconsideration of the court's January 20, 2010, memorandum and order is therefore unwarranted.

An appropriate order follows.

     S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:     June 27, 2012

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERESA ANNE SCOTT**, | : | CIVIL ACTION NO. 1:02-CV-1586 |
| | : | |
| **Plaintiff** | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **PAMELA WELLINGTON LACKEY**, | : | |
| | : | |
| **Defendant** | : | |

## ORDER

AND NOW, this 27th day of June, 2012, upon consideration of plaintiff Teresa Scott's motion for reconsideration (Doc. 404), filed June 8, 2012, and motion to strike (Doc. 420), filed June 25, 2012, it is hereby ORDERED that:

1. Scott's motion for reconsideration is DENIED.

2. Scott's motion to strike is DENIED as moot.

          S/ Christopher C. Conner
          CHRISTOPHER C. CONNER
          United States District Judge